852 F.2d 114
 57 USLW 2072, 1988 Copr.L.Dec. P 26,303,
48 Ed. Law Rep. 84,
7 U.S.P.Q.2d 1417
 RICHARD ANDERSON PHOTOGRAPHY, Plaintiff-Appellant,
v.
Deborah BROWN; Radford University, Defendants-Appellees.
and
VISITORS OF RADFORD UNIVERSITY; Bernice Thieblot; Armand
Thieblot, Defendants,
v.
NATIONAL MUSIC PUBLISHERS' ASSOCIATION, INC.; American
Society of Composers, Authors and Publishers; Broadcast
Music, Inc.; Music Publishers' Association of the United
States, Inc.; The Songwriters Guild of America; Volunteer
Lawyers for the Arts, Inc.; Barbara Ringer; John M.
Kernochan; William F. Patry; Association of American
Publishers; Association of American University Presses,
Inc.; Information Industry Association, American
Intellectual Property Law Association, Amici Curiae.
 No. 87-1610.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 2, 1987.
Decided July 20, 1988.
 
 Steven B. Rosenfeld (Peter L. Felcher, Marjorie L. Van Dercook, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on brief), for Amici Curiae Nat. Music Publishers' Ass'n, Inc., American Society of Composers, Authors and Publishers, Broadcast Music, Inc., Music Publishers' Ass'n of the U.S., and the Songwriters Guild of America.
 John M. DiJoseph (Sattler & DiJoseph, Arlington, Va., on brief), for appellant.
 Richard Crosswell Kast, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Paul J. Forch, Sr. Asst. Atty. Gen., Richmond, Va., on brief), for appellees.
 Frank J. Kelley, Atty. Gen., Louis J. Caruso, Sol. Gen., Harry G. Iwasko, Jr., Asst. Atty. Gen., Philip J. Smith, Asst. Atty. Gen., Lansing, Mich., on brief, for Amicus Curiae, The State of Mich. in support of appellees Radford University, et al.
 Irwin Karp, Harriette K. Dorsen, New York City, on brief, for Amici Curiae Volunteer Lawyers for the Arts, Inc.
 Barbara Ringer, Washington, D.C., John M. Kernochan, New York City, and William F. Patry, Washington, D.C., in support of appellant Richard Anderson Photography.
 Jon A. Baumgarten, Minna Schrag, Andrew W. Reich, Proskauer, Rose, Goetz & Mendelsohn, New York City, on brief, for Amici Curiae The Ass'n of American Publishers, Inc., American Ass'n of University Presses, Inc. and Information Industry Ass'n.
 Before PHILLIPS and CHAPMAN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 This appeal presents the questions whether the eleventh amendment provides immunity to a state educational institution, its governing board, and one of its officials, as sued in her official capacity, on a claim for damages under the Copyright Act of 1976, 17 U.S.C. Sec. 101 et seq. (the Act), and whether state law provides immunity to the state official as sued in her individual capacity. The district court found both eleventh amendment and state law immunity and dismissed all the claims. We affirm the dismissals on eleventh amendment grounds as to the state institution and its board and the official in her official capacity, though for different reasons than those given by the district court. We reverse the dismissal of the claim against the state official in her individual capacity on state law immunity grounds and remand that claim for further proceedings.
 
 
 2
 * In 1981, Radford University, an educational instrumentality of the Commonwealth of Virginia (Radford), contracted with the North Charles Street Design Organization (NCSDO) of Baltimore, Maryland, to produce a student prospectus. NCSDO in turn contracted with the plaintiff-appellant in this action, Richard Anderson Photography, Inc. (Anderson), to provide the photographs for use in Radford's 1982 student prospectus. Anderson took and obtained copyrights for a large set of photographs, some of which ultimately were published in the 1982 prospectus, per the contract.
 
 
 3
 At some point, Anderson concluded that Radford, through defendant-appellee Deborah Brown, Radford's Director of Public Information and Relations, was making unauthorized use of the photographs in violation of Anderson's exclusive rights under 17 U.S.C. Secs. 106(1), (2), (3) and (5). Anderson then brought this action against Radford, its governing board, and Brown, alleging such a violation and seeking injunctive and monetary relief. When Radford returned the photographs, Anderson dropped the claim for injunctive relief but continued to pursue the claim for damages against all the named defendants.
 
 
 4
 The defendants then jointly moved for dismissal of the action on the basis of their eleventh amendment immunity as, respectively, instrumentalities and an official of the state. Anderson responded by urging alternatively that Congress in the Copyright Act had directly abrogated the states' eleventh amendment immunity to suits under that Act, or that the Commonwealth of Virginia had constructively consented to being sued for violations of the Act by participating, through the use of copyright materials, in an activity regulated by Congress.
 
 
 5
 The district court dismissed the claims against Radford, its Board, and Brown insofar as she was sued in her official capacity. Specifically the court held that Congress did not have the power to abrogate the states' eleventh amendment immunity except under section 5 of the fourteenth amendment, a source of power not available in its enactment of the Copyright Act. The court did not address the further question whether, had the power existed, Congress had effectively exercised it. The court also rejected Anderson's alternative claim that the Commonwealth had constructively consented to suit, thereby waiving its eleventh amendment immunity by participating, through use of copyright materials, in congressionally regulated activity. See Richard Anderson Photography, Inc. v. Radford Univ., 633 F.Supp. 1154, 1158-60 (W.D.Va.1986).
 
 
 6
 The district court, however, then sua sponte raised and invited briefing on the issue whether Brown might be liable on Anderson's claim in her individual capacity. In response, Brown contended that because in the conduct charged to her she was acting within the scope of her official authority, she could only be sued in her official capacity, in which capacity she had properly been held immune to suit under the eleventh amendment. Anderson responded that because Brown's conduct was allegedly illegal, she could not be considered as acting within her official authority, so that she was exposed to individual liability free of the eleventh amendment's immunity.
 
 
 7
 The district court, however, rejected both parties' contentions on this point and held, sua sponte, that Brown could be sued in her individual capacity for the copyright violation charged to her, but that in that capacity she was entitled, under Virginia state law, to the immunity provided by Virginia law to state officials in the performance of discretionary functions. On this basis, the court dismissed the claim against Brown in her individual capacity.
 
 
 8
 This appeal by Anderson followed.
 
 II
 
 9
 With respect to its claims against Radford, the Radford Board, and Brown in her official capacity, hence effectively against the state, Anderson renews its arguments that the eleventh amendment provides no immunity. Two alternative theories are advanced.
 
 
 10
 The first theory is that Congress has directly abrogated the states' eleventh amendment immunity in its enactment of the Copyright Act. This argument in turn has two elements: first, that Congress has power under the Copyright and Patent Clause of the United States Constitution, art. I, Sec. 8, cl. 8, directly to abrogate the immunity of nonconsenting states to suits under the Act; and second, that Congress has effectively done so in the Copyright Act.
 
 
 11
 The second theory is that here the state, in any event, has constructively consented to suit, thereby impliedly waiving its immunity, by participating in federally regulated conduct through its own copyright activities.[1]
 
 
 12
 While these are conceptually different theories, they pose, under current doctrine, a common issue: whether Congress has effectively expressed its intention either directly to abrogate immunity, without regard to the states' consent, or to exact "constructive consent" to suit, hence, an "implied waiver" of immunity from the states as a condition of their participation in federally regulated, here copyright, activity.[2] Because the same basic test of congressional intent applies to both, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 247, 105 S.Ct. 3142, 3149-50, 87 L.Ed.2d 171 (1985); Welch v. State Dept. of Highways, --- U.S. ----, 107 S.Ct. 2941, 2947-48, 97 L.Ed.2d 389 (1987), and because resolving that issue may avoid the need to address any more fundamental issues of Congress' constitutional power to abrogate, see Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), we look first to the issue of congressional intent. See Welch, 107 S.Ct. at 2946-47.
 
 
 13
 That test, as recently refined by the Supreme Court in a series of critical decisions, is a most stringent one, couched deliberately in terms of constraints both upon the legislative power and the judicial interpretive process. Specifically, the Court has now held that because of the "fundamental nature of the interests implicated by the Eleventh Amendment," Atascadero, 473 U.S. at 242, 105 S.Ct. at 3147, and "the vital role of the doctrine of sovereign immunity in our federal system," Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) (Pennhurst II ):
 
 
 14
 Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute ... [and] it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides the guarantees of the Eleventh Amendment.
 
 
 15
 Atascadero, 473 U.S. at 242-43, 105 S.Ct. at 3147; see also Welch, 107 S.Ct. at 2946 (applying Atascadero test). As the Court sees it, the dual constraints are interdependent: "The requirement that Congress unequivocally express this intention in the statutory language ensures such [judicial] certainty." Atascadero, 473 U.S. at 243, 105 S.Ct. at 3147.
 
 
 16
 Applying the Atascadero/Welch test, we hold that, laying aside all questions of its constitutional power to abrogate by either means, Congress has not in the Copyright Act so unequivocally expressed its intention to abrogate either directly, without regard to consent, or indirectly by exacting consent as a condition of participation, as to allow us to find an override of the eleventh amendment immunity here invoked by the state defendants.
 
 
 17
 Though, as indicated, the basic inquiry into congressional intent is the same under both the "direct abrogation" and "implied waiver" theories of eleventh amendment override, there are differences between the two that require separate inquiries. We take the theories in the order stated.A
 
 
 18
 In considering whether Congress has unequivocally expressed an intention in the Copyright Act directly to abrogate eleventh amendment immunity, we start with the core substantive, remedial, and jurisdictional provisions of the Act as the most likely sources of any such expression.
 
 
 19
 Section 501 creates the basic right of action. It provides that the registered owner of any of the exclusive rights conferred under the Copyright Act, see 17 U.S.C. Secs. 106-118, may institute an action for infringement against an infringer of any of those rights. See 17 U.S.C. Sec. 501(b). Section 501 describes an infringer as follows:
 
 
 20
 (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118, or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright.
 
 
 21
 (Emphasis added.)
 
 
 22
 Sections 504 and 505 provide for monetary remedies against an infringer in the form of actual or statutory damages, costs and attorney's fees, except as against the United States or its officers. Section 502 provides for injunctive relief: "[a]ny court having jurisdiction of a civil action arising under" the Act may "grant temporary and final injunctions ... as it may deem reasonable to prevent or restrain infringement of a copyright." Additionally, Sec. 301 provides that any rights equivalent to those governed by the Act existent under the common law or statutes of any state are preempted.
 
 
 23
 The Act does not itself provide for federal jurisdiction over suits brought pursuant to its provisions. Because of the need for national uniformity of copyright law, however, Congress has separately provided for exclusive federal jurisdiction over civil actions arising under the Act. See 28 U.S.C. Sec. 1338(a).
 
 
 24
 It is clear, therefore, that the effect of these core substantive, remedial and jurisdictional provisions is to provide a general right of action, exclusively maintainable in the federal courts, under which both monetary and injunctive relief may be obtained against "anyone who violates any of the exclusive rights of the copyright owner." 17 U.S.C. Sec. 501(a). Anderson's basic argument is that this general authorization for enforcement actions against "anyone" sufficiently expresses Congress' intent that the states, as entities necessarily included within the descriptive "anyone," shall be subject to suit for the full range of remedies provided by the Act. To this there is a short and decisive response: such a general authorization, for suit against "anyone" in federal court is not, in itself, a sufficiently clear and unequivocal indication of congressional intent to subject unconsenting states to suits for money damages in federal court. See Welch, 107 S.Ct. at 2947; Atascadero, 473 U.S. at 246, 105 S.Ct. at 3149.
 
 
 25
 This does not, however, end the matter. Anderson rightly contends that our inquiry must focus on the language of the statute as a whole. We agree that we are not limited in our inquiry to the core provisions authorizing suit and generally describing those who may sue and be sued to enforce the Act's substantive rights. "Rather, we [must] seek to understand a given provision by determining how it fits into the larger statute of which it is a part." In re McVey Trucking, 812 F.2d 311, 326 (7th Cir.1987). We therefore look to other provisions of the Act which Anderson and associated amici contend make congressional intention to abrogate sufficiently clear when read in conjunction with the basic provisions just discussed.[3]
 
 
 26
 The provisions on which Anderson relies are 17 U.S.C. Secs. 107, 108, 110(2), 110(6), 111(a), 112, 118(d)(3), 601 and 602. We consider them in order.
 
 
 27
 Section 107 provides for certain specified uses of copyrighted materials that will not be considered as infringements. See 17 U.S.C. Sec. 107. These "fair uses" include reproduction of multiple copies for classroom use by teachers. Anderson argues that this provision is superfluous if state schools are to be considered immune from suit. This argument is without merit not only because, as we discuss below, a teacher's immunity from suit is not coextensive with that of the state, but also because the limitations in Sec. 107 can be read as applying to teachers in local school districts that might not, in any event, share the states' eleventh amendment immunity. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280-81, 97 S.Ct. 568, 573-73, 50 L.Ed.2d 471 (1977). Likewise, the explicit limitations on a copyright holder's exclusive rights pertaining to use of the copyrighted work by "libraries and archives" found in Sec. 108, can be read as applicable to private and local institutions and therefore are not superfluous absent congressional abrogation of the states' eleventh amendment immunity.
 
 
 28
 Anderson also relies heavily on Sec. 110(2) of the Copyright Act which includes as noninfringing activities the performance or display of a "nondramatic literary or musical work" if:
 
 
 29
 (A) the performance or display is a regular part of the systematic instructional activities of a governmental body or a nonprofit educational institution; and
 
 
 30
 (B) the performance or display is directly related and of material assistance to the teaching content of the transmission; and
 
 
 31
 (C) the transmission is made primarily for--
 
 
 32
 (i) reception in classrooms or similar places normally devoted to instruction, or
 
 
 33
 (ii) reception by persons to whom the transmission is directed because their disabilities or other special circumstances prevent their attendance in classrooms or similar places normally devoted to instruction, or
 
 
 34
 (iii) reception by officers or employees of governmental bodies as a part of their official duties or employment.
 
 
 35
 Anderson contends that use of the phrase "governmental bodies" in this provision is a sufficiently clear indication of congressional intent to subject the states to damage suits for copyright infringement in federal court. The argument is that if it were otherwise, Congress would not have excepted some of the states' activities from liability under Sec. 110(2) through use of the phrase "governmental bodies." We conclude, however, that the phrase "governmental bodies" in this context has the same ambiguity for the purpose at hand as do the provisions in Secs. 107-108. Clearly the phrase could be read as applicable only to local governments or to actions by government officials so that the states' continued immunity would not render Sec. 110(2) superfluous.
 
 
 36
 The Seventh Circuit's recent decision in In re McVey Trucking, 812 F.2d 311 (7th Cir.1987), is not to the contrary. There, in the course of determining that the Bankruptcy Code abrogates the states' eleventh amendment immunity, the court concluded that the phrase "governmental units" contained in Sec. 106(c) of the Code, was intended to include the states as the targets of suit, hence expressly to have abrogated immunity. Id. at 326. But the McVey court reached this conclusion by looking to a definitional provision of the Code that defined "governmental unit" as including states. Id. While there is some question whether "clear and unequivocal intent" can properly be found through reference to such definitional provisions, see United States v. Union Gas Co., 832 F.2d 1343, 1347-50 (3d Cir.1987), it is not necessary for us to consider that issue here. Nowhere in the definitional provisions or elsewhere in the body of the Copyright Act is the phrase "governmental bodies" defined explicitly as including states. Section 110(2) therefore fails to support Anderson's claim that the Act directly abrogates the states' eleventh amendment immunity. For the same reasons, Secs. 110(6), 110(8), 111(a), 112, and 118(d)(3), also using the phrase "governmental body" without explicit reference to states as distinct from local governments, fail to support Anderson's argument.
 
 
 37
 Anderson next argues that Sec. 601 of the Act, a provision that lapsed on July 1, 1986, would be superfluous if Congress had not intended the states to be subject to damage suits in federal court under the Copyright Act. Section 601 merely prohibited the importation into the United States of predominantly nondramatic literary works not published in the United States or Canada. See 17 U.S.C. Sec. 601(a). Section 601 was tied to Sec. 501 in that a plaintiff's illegal importation under Sec. 601 was a complete defense to plaintiff's suit for infringement "with respect to all of the nondramatic literary material comprised in the work." 17 U.S.C. Sec. 601(d). Section 601(b)(3) provided, however, that the defense did not apply, in pertinent part, "where importation is sought under the authority or for the use, other than in schools, of the Government of the United States or of any State or political subdivision of a State." 17 U.S.C. Sec. 601(b)(3). Laying aside the point that a lapsed statutory provision lacks persuasive force, we decline to conclude that by disallowing an otherwise valid defense to an infringement action when the allegedly infringed work's importation was "sought under the authority or for the use ... of any State," id., Congress evidenced an intent to subject the state itself to an action for damages for infringement in federal court.
 
 
 38
 Anderson's final argument draws on Sec. 602 of the Act, which provides, in pertinent part, that:
 
 
 39
 (a) Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies of phonorecords under section 106, actionable under section 501. This subsection does not apply to--
 
 
 40
 (1) importation of copies or phonorecords under the authority or for the use of the Government of the United States or of any State or political subdivision of a State, but not including copies or phonorecords for use in schools, or copies of any audiovisual work imported for purposes other than archival use.
 
 
 41
 17 U.S.C. Sec. 602(a)(1).
 
 
 42
 The argument is that the exception in subdivision (1) relating to importations "under the authority or for the use of ... any state" would not be required were states already subject to general immunity. If the subdivision (1) exception referred to importation "by" any state rather than "under the authority or for the use of ... any State," this provision might support Anderson's argument. As it stands, however, the exception can most logically, certainly arguably, be read as exempting from liability only those private persons or public officials acting in their individual capacity who import copyright materials under governmental authority or for governmental use. Section 601 is not, therefore, an unequivocal indication of Congress's intent to subject the state itself to an action for damages for infringement.
 
 
 43
 For these reasons, we hold that the language of the Copyright Act, considered as a whole, does not clearly and unequivocally indicate Congress's intent to create a cause of action for money damages enforceable against the states in federal court, thereby directly abrogating the states' eleventh amendment immunity.
 
 B
 
 44
 Anderson's alternative theory is, as indicated, that the Commonwealth of Virginia has "constructively consented" to suit and thereby "impliedly waived" its immunity to suits for damages under the Copyright Act by its own participation in the conduct federally regulated by that Act. In support of this theory, Anderson and its associated amici rely on the doctrine of "implied waiver by participation" as applied most critically in Parden v. Terminal Ry. of Alabama Docks Dept., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In Parden, the Court did hold that general language in the FELA, 45 U.S.C. Secs. 51-60, making that Act applicable to "every common carrier" engaged in interstate commerce, permitted an injured employee of a state-owned railroad to sue the state for money damages under the FELA. "Implied waiver" of the state's eleventh amendment immunity was found in its participation, as owner and operator of a railroad engaged in interstate commerce, in conduct regulated by the FELA, in the face of language in that Act which, without definitional limitation, exposed to suits for damages "every common carrier" so engaged.
 
 
 45
 Were this holding in Parden still authoritative, Anderson's argument might well prevail. There is no question but that the state here has participated, as truly as did the state in Parden, in federally regulated conduct. The general language in Sec. 501 of the Copyright Act defining as an "infringer" subject to suits for damages "anyone" who violates that Act's substantive provisions would seem as inclusive of states as was the descriptive "every common carrier" which was held in Parden to have that effect.
 
 
 46
 But Parden is not still authoritative on the critical point of Anderson's alternative contention. Some years after Parden, the Court in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), raised cautions about too freely using notions of "constructive consent" through participation in federally regulated conduct to find the states' eleventh amendment immunity overridden. Id. at 673, 94 S.Ct. at 1360 ("not a doctrine commonly associated with the surrender of constitutional rights"). Later, in Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), the Court gave even harder content to the Edelman caution, holding that to find the eleventh amendment immunity overridden by this means, there must be not only an unequivocal indication of state participation in federally regulated activity, id. at 238 n. 1, 105 S.Ct. at 3145 n. 1, but a congressional expression of intent to condition participation upon consent as clear and unequivocal as that required to abrogate directly the immunity of unconsenting states. Id. at 247, 105 S.Ct. at 3149-50. After Atascadero, it was obvious that that decision's stringent test for finding "implied waiver" by "constructive consent" drew Parden's much looser approach in serious question,[4] and in fairly short order the Supreme Court resolved the matter by confirming the Atascadero test as the authoritative one. In Welch v. State Dept. of Highways & Pub. Transp., --- U.S. ----, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), one question was whether a state had constructively consented to suits in federal courts under the Jones Act, 46 U.S.C.App. Sec. 688, by operating a ferry under conditions invoking the provisions of that Act. Directly in issue--in fact dispositive of the point--was whether Parden, which had found immunity waived for FELA purposes by the state's operation of a railroad, controlled to dictate the same result under the closely related (indeed borrowed) Jones Act provisions as applied to state employed seamen. The Welch court held flatly that though Parden had not before been expressly overruled, several decisions, culminating in Atascadero, had now left "no doubt that [its] discussion of congressional intent to negate Eleventh Amendment immunity is no longer good law." Welch, 107 S.Ct. at 2948. The more stringent test most recently applied in Atascadero was reaffirmed and Parden was expressly overruled "to the extent ... inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language." Id.
 
 
 47
 Here, the critical language of the Copyright Act, as analyzed in Part II.A above, no more unequivocally expresses an intention to condition participation by the states upon their constructive consent to suit than it does to effect a direct abrogation of their immunity without regard to their actual or constructive consent. Cf. Welch, 107 S.Ct. at 2946-48 (applying parallel tests of congressional intent to both "direct abrogation" and "constructive consent" contentions); Atascadero, 473 U.S. at 242-47, 105 S.Ct. at 3147-50 (same).
 
 
 48
 For these reasons, we hold that there has been no implied waiver of eleventh amendment immunity by the Commonwealth's participation in federally regulated copyright activity.
 
 III
 
 49
 As indicated, after holding, as we have now affirmed, that the claim against Brown in her official capacity was barred by the eleventh amendment, the district court ruled further, sua sponte, that she was also immune to the claim in her individual capacity, on the basis of the immunity accorded by state law to state officials sued in their individual capacities for conduct taken in the performance of discretionary functions. Notwithstanding this ruling according her absolute immunity in her individual capacity, Brown continues to maintain on this appeal, as she has throughout, that on a more fundamental basis the claim against her is one that can only be considered one in her official capacity, as to which she enjoys eleventh amendment immunity.
 
 
 50
 Both theories of immunity being properly before us, whether as raised by Brown as appellant or as invoked sua sponte by the district court, we consider them in turn.
 
 
 51
 * We agree with the district court that the circumstances do not warrant treating the claim against Brown as necessarily only one in her official capacity. We hold instead, with the district court, and against Brown's contention, that the claim may properly be considered one against her in her individual capacity.
 
 
 52
 There are of course circumstances under which a claim against a state official for monetary relief can only be considered as one in the defendant's official capacity, hence one effectively against the state and therefore subject to eleventh amendment immunity. The test is whether "the judgment sought ... would require an official to do that which he could only do by virtue of the fact that he is an official, that quoad hoc he is the State." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 714, 69 S.Ct. 1457, 1474, 93 L.Ed. 1628 (1948) (Frankfurter, J., dissenting); see also Edelman, 415 U.S. at 664-65, 94 S.Ct. at 1356-57 (action to compel state official to release withheld welfare benefits is effectively one seeking monetary relief from the State itself; hence barred by the eleventh amendment).
 
 
 53
 The claim against Brown here is obviously not of that character. Brown could obviously pay a judgment for money damages independently of her status as a state official, and without any consequences to the state's fisc. See American Civil Liberties Union, Inc. v. Finch, 638 F.2d 1336, 1341 (5th Cir.1981). The mere fact that her conduct was undertaken in the course of her state employment does not of course relieve her of individual liability, even if her employer could not be sued for it. A state may no more than an individual principal give its agent authority to commit torts without civil recourse. Larson, 337 U.S. at 694 n. 15, 69 S.Ct. at 1463 n. 15.
 
 
 54
 Brown is therefore amenable to suit in her individual capacity for the claimed copyright violation.
 
 B
 
 55
 That leads to the question whether, as the district court ruled, Brown is nevertheless immune to such an action by virtue of discretionary function immunity as conferred by state law.
 
 
 56
 The answer is simple. Without regard to the exact nature of any such state law of immunity and to whether, if generally applicable, it would apply here, state law cannot provide immunity to persons sued for violating the Copyright Act in the way here alleged. The Supremacy Clause, U.S. Const. art. VI cl. 2, precludes any such application of state immunity law. While the Constitution does not give Congress exclusive authority over copyright to the exclusion of any state laws, Goldstein v. California, 412 U.S. 546, 553, 93 S.Ct. 2303, 2308, 37 L.Ed.2d 163 (1973), the states cannot either enhance or diminish the scope of protection afforded to those categories of writings that "Congress determines ... worthy of national protection." Id. at 559, 93 S.Ct. at 2311. See also 17 U.S.C. Sec. 301. Because the materials here in issue fall within the "national protection" provided by the Copyright Act, any immunity provided by state law for violators of rights in those materials would obviously diminish the scope of the Act's protection.
 
 
 57
 State law therefore provides no immunity to Brown against a claim in her individual capacity, though she may obviously invoke any of the numerous defenses that may be available to her under the Act itself.
 
 
 58
 We therefore reverse the district court's ruling that Brown is immune under state law to the claim against her in her individual capacity, and remand that claim for further proceedings.
 
 
 59
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS.
 
 
 60
 TERRENCE WILLIAM BOYLE, District Judge, concurring in part and dissenting in part:
 
 
 61
 I agree with the majority that the Commonwealth of Virginia has not "constructively consented" and "impliedly waived" its immunity and therefore concur in section IIB of the opinion. I also agree with the majority that the plaintiff's copyright claims against the defendant Brown are enforceable and therefore I concur in section III of the majority opinion.
 
 
 62
 The majority has concluded that Congress has not expressly abrogated, in clear and unequivocal terms, state immunity under the eleventh amendment for copyright actions brought by private individuals. Because I believe that Congress, through the enactment of the Copyright Act, 17 U.S.C. Secs. 101-914, has abrogated Radford University's eleventh amendment immunity, I respectfully dissent from section IIA of the majority opinion.
 
 
 63
 The majority points out that eleventh amendment jurisprudence presently interprets that amendment to embody a general principle of sovereign immunity. The rule of Atascadero State Hospital v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), and Welch v. State Department of Highways, --- U.S. ----, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), holds that in order to displace this immunity Congress must do so in "unmistakably clear language." A review of the evolution and language of the Copyright Act leads me to the conclusion that the Act is sufficiently clear and unmistakable to indicate congressional intent to subject state governments to suits of this nature.
 
 I.
 
 64
 Preliminarily I note that the majority has declined to discuss the methods by which Congress may exercise its power to abrogate state immunity. The district court in this action concluded that Congress may only abrogate the states' eleventh amendment immunity when acting pursuant to Sec. 5 of the fourteenth amendment. Richard Anderson Photography v. Radford University, 633 F.Supp. 1154, 1158 (W.D.Va.1986). The Supreme Court has expressly declined to address this question.[1] Recent circuit authority concludes that Congress may abrogate when acting pursuant to any plenary power it has been granted by the Constitution. United States v. Union Gas, 832 F.2d 1343, 1351-53 (3rd Cir.1987); McVey Trucking v. Secretary of State, 812 F.2d 311, 316 (7th Cir.1987). This conclusion is consistent with the constitutional balance of power struck between the national government and the individual states.
 
 
 65
 Article I, Sec. 8, cl. 8 of the Constitution provides: "The Congress shall have Power ...; To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." (emphasis added).
 
 
 66
 Article VI, cl. 2 of the Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
 
 
 67
 The tenth amendment to the Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." (emphasis added).
 
 
 68
 The plain language of the Constitution delegates to Congress the power to enact exclusive copyright laws. This is exactly what Congress has done.[2] This is a "power" as defined by article I, Sec. 8. It is the kind of "power" which was "delegated" to Congress by the Constitution. Such laws are made supreme law of the land by article VI. It was one of the powers not reserved to the states but expressly delegated by the people and the states to the United States in article I and acknowledged in the tenth amendment.
 
 
 69
 The supremacy clause requires that the judges in every state be bound by this supreme federal law "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Certainly something in the Constitution and laws of every state at the time of ratification was that state's claim of sovereign immunity. The states were absolutely sovereign and immune from suit when they were at the pinnacle of the political order prior to the Constitution. After the Constitution was ratified, the states shared sovereignty with the United States. The states became servient to the supreme law of the land where power was delegated to the Federal government and exercised by Congress. This construction draws from the plain meaning of the words used in the Constitution.
 
 
 70
 The eleventh amendment does not arrive on the scene until some ten years after the ratification of the Constitution. The source of the amendment and its effect is well documented both in history and in law.[3]
 
 
 71
 That amendment is remedial in origin, directed as a response to the Court's decision in Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793). The amendment has been read expansively by the Supreme Court to address circumstances broader than its initial remedial purpose.
 
 
 72
 A narrow reading of the eleventh amendment would imply that its sole purpose is to withdraw an item of diverse citizenship subject matter jurisdiction from the federal courts. The corollary to such a narrow reading is the conclusion that non-diverse claims which have an independent basis of subject matter jurisdiction in federal court would be allowed against the states. In fact, the Court has concluded that states may not be sued by diverse citizens on any ground, not just on the basis of their status in diversity. See Welch, 107 S.Ct. at 2945.[4]
 
 
 73
 In Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890), the Court for the first time held that implicit in the eleventh amendment prohibition against suits by foreign citizens was a recognition that domestic citizens were barred from suing their own states because of the inherent immunity of the state from such suit.
 
 
 74
 The Court determined that the eleventh amendment not only deprived the federal courts of subject matter jurisdiction in suits between states and foreign citizens as the amendment expressly states, but also that the principle of sovereign immunity was implied in the amendment against all suits by citizens against states. Taking the broadest possible reading of the language in Hans, however, it would be impossible to conclude that the eleventh amendment usurped the delicate balances of power embodied in the Constitution.
 
 
 75
 The words of the eleventh amendment do not touch upon the issue of sovereign immunity. The amendment limits the subject matter jurisdiction of the federal courts as it was originally constructed in article III and affirmed in Chisholm v. Georgia by removing from article III, Sec. 2 a certain class of cases involving states and other citizens not of that state. The amendment operates on the "judicial power of the United States" and does not by its terms operate on the states. The amendment does not vest states with any new rights; it simply further diminishes the "judicial power" that can be exercised against states by the federal courts.
 
 
 76
 The federal courts are courts of limited subject matter jurisdiction and thus may not act in those circumstances where they lack subject matter jurisdiction. As such, the concept of sovereign immunity does not germinate from the actual language of the eleventh amendment.
 
 
 77
 The principle of sovereign immunity that arises from judicial interpretation of the eleventh amendment must by its nature be somewhat less powerful than the sovereign immunity the states originally gave up when they ratified the Constitution. Indeed, the Supreme Court has recognized this fact by explicitly allowing Congress to abrogate state sovereign immunity through Sec. 5 of the fourteenth amendment. It would not be said, however, that the fourteenth amendment has "repealed" the eleventh amendment. Similarly, the eleventh amendment cannot be construed so as to "repeal" article I.
 
 
 78
 "Extending the eleventh amendment to prohibit congressional power to abrogate under Article I would ignore the states' representation in Congress and their consent to diminished power implicit in their acceptance of the Constitution." Union Gas, 832 F.2d at 1355. Hence, what the Supreme Court has given the states through interpretations of the eleventh amendment is circumscribed by the states' acceptance of the principle of federalism embodied in the Constitution. The sovereign immunity of the eleventh amendment forms a presumption that the states may not be sued. This presumption may be refuted by acts of Congress. In my view then, the Copyright Act, enacted by Congress pursuant to an article I power, may provide the vehicle with which to abrogate the states' immunity.
 
 II.
 
 79
 I will now analyze the Act itself with the caveat that I agree with the majority's conclusion that the statute as a whole must be analyzed in order to guage congressional intent to abrogate or preserve state eleventh amendment immunity.
 
 
 80
 The majority relies upon both Atascadero and Welch to find the language in the Copyright Act insufficient to abrogate state immunity. In Atascadero, the Court held that Congress did not abrogate California's eleventh amendment immunity when it passed the Rehabilitation Act of 1973 (29 U.S.C. Sec. 794). Section 794a(a)(2) of the Act allows "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance...." The Court found this general authorization for suit was not the "unmistakably clear language" needed to abrogate. In Welch, the Court held that Texas' immunity was not abrogated by the Jones Act. The Jones Act allows "any seaman who shall suffer personal injury in the course of his employment" to maintain an action (46 U.S.C. Sec. 688). This general authorization was also insufficient to subject the states to suit.
 
 
 81
 Given this authority, I agree with the majority that the Copyright Act's authorization of suit against "anyone" in Sec. 501 is not in itself a sufficiently clear congressional statement to abrogate state immunity under the eleventh amendment. The use of the term "anyone," however, is only a portion of the story.
 
 
 82
 Section 101 of the original Copyright Act of 1909 made liable "any person" who violated the substantive provisions of the Act. An important change was made to the Act in 1976. Section 501 was drafted to replace former Sec. 101 and made "anyone" who violated the Act liable. This change is significant and there is no question that the change itself enlarged, rather than contracted or left alone, the class of possible defendants. The court in Johnson v. University of Virginia, 606 F.Supp. 321, 324 (D.Va.1985), was quick to point this out and concluded that the change was expansive enough to encompass the states.[5]
 
 
 83
 The majority fails to mention the change in statutory language. The fact that Congress arrived at the term "anyone" after starting with "any person" indicates it was not satisfied with previous coverage under the Act. A perusal of other statutes indicates that a logical interpretation of the change was that it was designed to include states within the class of potential violators. There is no other conceivable class of potential defendants that could have been intended to be included by the change.
 
 
 84
 Even at this point in the analysis the language at bar is more demonstrative in its intent to include the states than that at issue in either Atascadero or Welch. The generalized language in Atascadero is not supported by any similar change in the wording of the statute. The operative language in Welch is even less conclusive in identifying the states as possible defendants because it refers to a class of plaintiffs. Here the "anyone" language of the Copyright Act refers to a class of defendants.
 
 
 85
 It is clear that Atascadero and Welch require unequivocal statutory language in order to abrogate eleventh amendment immunity. The specific language addressed in those cases, however, is far different than that of the Copyright Act. The change from "any person" to "anyone" is indicative of congressional intent to subject the states to suit. The change, standing alone, however, is not a sufficient statement of congressional intent to abrogate state immunity. At a minimum, the term "anyone" certainly does, on its face, include the states within a class of potential defendants.[6] It is the series of exemptions within the Act that present the necessary "unequivocal indication of congressional intent to subject unconsenting states to suits for money damages in federal court."
 
 III.
 
 86
 While Sec. 501, in conjunction with Sec. 504, makes anyone who violates an owner's copyright protections liable for damages, the Copyright Act contains a variety of exemptions from liability. I accept the proposition that when Congress specifically identified states in the exemptions, it intended the states to be subject to suit in all other cases. This interpretation is consistent with the use of the word "anyone" in Sec. 501 where Congress made the field of possible defendants as wide as possible. Then, through a specific list of exemptions, Congress narrowed the field of defendants in order to effectuate the full purposes and policies of copyright law.
 
 
 87
 It would be a strained statutory construction to hold that Congress added exemptions to the Copyright Act specifically in favor of the states if the states were already immune under the eleventh amendment.
 
 A. The Section 602 Exemption
 
 88
 Section 602 of the Act, in conjunction with Sec. 106 and Sec. 501, prohibits the importation of copies or phonorecords of copyrighted material that have been acquired outside the United States. The prohibition, however, does not apply to "importation of copies or phonorecords under the authority or for the use of the Government of the United States or of any State or political subdivision of a State...." (emphasis added).
 
 
 89
 The majority writes that this language might support Anderson's argument if it read importation "by" any state rather than "under the authority or for the use of ... any State." The majority then concludes that the exemption "can most logically, certainly arguably, be read as exempting from liability only those private persons or public officials acting in their individual capacity who import copyright materials under governmental authority or for governmental use." ante at 120 (emphasis added). This restrictive interpretation, however, produces an anamolous result; state governments are immune under the eleventh amendment, state officials are immune under Sec. 602, local governments are not immune at all, and local officials are immune under Sec. 602. This crazyquilt of liability and immunity cannot be what Congress intended.
 
 
 90
 A more logical and natural interpretation of Sec. 602 is that it exempts federal, state and local governments and their officials acting in their official capacity. Officials acting in their official capacity are exempted by the language reading "under the authority ... of...." in Sec. 602(a)(1). The governments, federal, state and local, are exempted by the language reading "for the use of...." This language is connected by the word "or" which means that each portion may stand alone. The majority's argument would be more compelling if the connecting word had been "and" but this is not the case. The use of the word "or" indicates an exemption for two distinct "classes" of defendants.
 
 
 91
 To construe Sec. 602 to provide protection for officials in their individual capacity is inconsistent with the purpose of Sec. 602 which is to prevent importation of unauthorized and "piratical" materials. The legislative history is barren of support for the idea that only government officials in their individual capacity are entitled to the protection of the exemption. At a minimum, some inkling in the legislative history would be necessary to sustain the odd interpretation of Sec. 602 the majority has offered. The legislative history of Sec. 602, however, does not speak to the way in which the exemption in (a)(1) should be construed. Thus, the words in the section should be given their plain meaning. In my opinion it is improper to narrow the scope of Sec. 602(a)(1)'s exemption in light of the statutory language and legislative history. By exempting the states in Sec. 602, Congress evidenced a clear and unequivocal intent to subject the states to suit in non-exempted areas.
 
 B. The "Governmental Bodies" Exemptions
 
 92
 The legislative history of Sec. 602 does uncover a point that is relevant in a discussion of other exemptions. In paraphrasing the statutory language of exemption (a)(1), the House Report states that the subsection does not apply to "importation under the authority or for the use of a governmental body...." H.R.Rep. No. 1467, 94th Cong., 2d Sess. 167, reprinted in 1976 U.S. Code Cong. & Admin. News 5659, 5783, 5785-86 (emphasis added). This is a paraphrase of Sec. 602 that exempts "the Government of the United States or of any State or political subdivision of a State...." This language is relevant to the central theme of the majority's disposal of the Act's exemptions for "governmental bodies." The majority states that the "phrase 'governmental bodies' in this context has the same ambiguity for the purpose at hand as do the provisions in Secs. 107-108." ante at p. 119. This conclusion cannot withstand scrutiny. A natural reading of the term "governmental bodies" would include a state government. This conclusion is buttressed by the legislative history of Sec. 602 which uses the phrases "governmental bodies" and "Government of ... any State" interchangeably.[7]
 
 
 93
 Section 110 of the Act lists a variety of exemptions to the exclusive rights of the copyright holder. Subsection (2) allows performance or display of a nondramatic literary or musical work if:
 
 
 94
 (A) the performance or display is a regular part of the systematic instructional activities of a governmental body or a nonprofit educational institution; and
 
 
 95
 (B) the performance or display is directly related and of material assistance to the teaching content of the transmission; and
 
 
 96
 (C) the transmission is made primarily for--
 
 
 97
 (i) reception in classrooms or similar places normally devoted to instruction, or
 
 
 98
 (ii) reception by persons to whom the transmission is directed because their disabilities or other special circumstances prevent their attendance in classrooms or similar places normally devoted to instruction, or
 
 
 99
 (iii) reception by officers or employees of governmental bodies as a part of their official duties or employment;
 
 
 100
 (emphasis added). The majority concludes that the reference to "governmental bodies" in Sec. 110(2) "could be read as applicable only to local governments or to actions by government officials so that the states' continued immunity would not render Sec. 110(2) superfluous." ante at 119. Again, there is no apparent reason to read the statute in such a restrictive manner. The phrase "governmental bodies" on its face encompasses federal, state and local governments. The majority looks in vain for a definition of the phrase that includes "states" within its grasp. The cart, however, is before the horse. Unless defined otherwise, a phrase should be given its plain meaning.
 
 
 101
 In subsection (iii) of Sec. 110(2), Congress has demonstrated the ability to specifically identify "officers or employees of governmental bodies." An interpretation of the term "governmental bodies" to mean only government officials is unwarranted given Congress's skills.
 
 Section 110(6) of the Act exempts a:
 
 102
 (6) performance of a nondramatic musical work by a governmental body or a nonprofit agricultural or horticultural fair or exhibition conducted by such body or organization; the exemption provided in this clause shall extend to any liability for copyright infringement that would otherwise be imposed on such body or organization, under doctrines of vicarious liability or related infringement, for a performance by a concessionaire, business establishment, or other person at such fair or exhibition, but shall not excuse any such person from liability for the performance;
 
 
 103
 (emphasis added). This exemption provision goes into great detail to explain that the governmental body itself is the only exempted party. There is no possible construction that would extend the exemption to persons responsible for the performance.
 
 
 104
 Section 110(6) has been drafted in a specific and detailed fashion. If Congress had intended that local governments were to be the only beneficiary of the exemption, it could easily have so stated. It seems apparent, however, that all fairs, including state fairs, were targets of this legislation.
 
 
 105
 The list of exemptions involving "governmental bodies" continues. Section 110(8) exempts transmissions of material to blind or handicapped persons if the transmission is made through the facilities of a governmental body. Section 111(a)(4) permits secondary transmissions by governmental bodies if made for no commercial advantage. Sections 112(b), (c), (d) allow governmental bodies to make copies of limited numbers of phonorecords in certain noncommercial situations. Section 118(d)(3) allows governmental bodies to record certain transmissions and hold them for a period of seven days.[8]
 
 
 106
 In short, to make all the foregoing exemption provisions applicable only to local governments is to render nugatory a great volume of work done by Congress. It is difficult to believe that the great variety of "governmental body" exemptions found in the Act were prompted by concerns to protect local governments from infringement actions.[9]
 
 IV.
 
 107
 The Atascadero/Welch rule requires that Congress express its intent to abrogate in clear and unequivocal terms. Further, the Supreme Court does not permit abrogation to occur on the basis of a general authorization for suit. I believe that the authorization here has been expressed in a more than adequately clear and specific fashion. The change in statutory language coupled with the extensive series of specific exemptions demonstrates congressional intent in this field.
 
 
 108
 The outcomes of Atascadero and Welch should not control the present action. The statutory language of the Act in conjunction with the legislative history indicate an unequivocal intent to abrogate the states' immunity under the eleventh amendment. If Congress had the benefit of Atascadero and Welch in 1976 when it rewrote the Act, it may be that it would not have taken for granted what appears to be so obvious--that is that the states may be held accountable for their violations of copyright as secured under the Constitution. Nevertheless, the statute, taken as a whole, demonstrates the necessary specific and unmistakable language needed to abrogate eleventh amendment immunity.
 
 
 109
 I would allow Anderson to maintain his copyright action against the Commonwealth of Virginia and therefore I must respectfully dissent.
 
 
 
 [1]
 There is no contention that the state has expressly waived its immunity by statute or constitution
 
 
 [2]
 By referring to this theory of eleventh amendment override alternatively as "indirect abrogation" or "exacted consent," we simply draw on still other ways to describe what has come more commonly to be described interchangeably as "constructive consent" or "implied waiver." Both of these latter descriptives refer to the states' ultimate conduct which perfects the override by this particular means. The former descriptives refer instead to the congressional action which sets this process in motion. All serve equally well. The virtue of the descriptives that refer to the congressional action is that they emphasize the critical point here in issue, whether Congress has indeed taken the critical initiating step from which "implied waiver" or "constructive consent" by the states may have followed. "Indirect abrogation" by "exacting constructive consent" serves also to distinguish this process from "direct abrogation without consent." Obviously no substantive difference is intended
 
 
 [3]
 We note that several courts that recently have found the language of the Copyright Act insufficient to abrogate the states' eleventh amendment immunity seemingly have confined their analysis to the language of Sec. 501. See, e.g., BV Eng'g, Inc. v. University of California, Los Angeles, 657 F.Supp. 1246, 1250 (C.D.Cal.1987); Woelffer v. Happy States of America, Inc., 626 F.Supp. 499, 504 (N.D.Ill.1985). We agree with Anderson that the broader inquiry is required
 
 
 [4]
 A point noted by the district court as it considered the question before the decision in Welch
 
 
 [1]
 Justice Powell, in Atascadero, ruled that Congress can abrogate when acting pursuant to Sec. 5 of the fourteenth amendment. 105 S.Ct. at 3145. The district court below construed this language to implicitly negate any other method of abrogation. This implication is unwarranted. Although the Court in Welch was not faced with this question because, like the majority here, it did not find a clear and unequivocal expression by Congress to subject the states to suit, the Court did state: "We assume, without deciding or intimating a view of the question, that the authority of Congress to subject unconsenting States to suit in federal court is not confined to Sec. 5 of the Fourteenth Amendment." 107 S.Ct. at 2946
 
 
 [2]
 As the majority explains, these exclusive copyright laws are also the exclusive province of the federal courts. Section 301 of the Act preempts all copyright action based upon the common law or statutes of a state. Furthermore, 28 U.S.C. Sec. 1338(a) provides for exclusive federal jurisdiction under the Act
 
 
 [3]
 See, e.g., J. Orth, The Judicial Power of the United States--The Eleventh Amendment in American History (1987); Fletcher, A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather than a Prohibition Against Jurisdiction, 35 Stan.L.Rev. 1033 (1983); Comment, Copyright Infringement and the Eleventh Amendment: A Doctrine of Unfair Use? 40 Vand.L.Rev. 225 (1987). See also Atascadero, 105 S.Ct. at 3146 n. 2; Welch, 107 S.Ct. at 2949-57 & accompanying notes
 
 
 [4]
 This holding by the Supreme Court lays the groundwork for prospective conflicts in the enforcement of the law where abrogation of state sovereign immunity is found to exist, regardless of whether it is under section 5 of the fourteenth amendment or under the assumptions concerning abrogation set out in Welch. This conflict would arise from the argument that citizens of a state had enforceable rights against their own state but that suits by foreign citizens would continue to be barred by the subject matter jurisdiction bar of the eleventh amendment
 
 
 [5]
 The Johnson court laid the foundation for this conclusion by citing with approval the opinion in Mills Music, Inc. v. Arizona, 591 F.2d 1278 (9th Cir.1979). The Mills court found that the "any person" language of the 1909 Act was sufficient to include the states in the class of potential defendants and that Congress, through the Copyright Act, had abrogated the states' eleventh amendment immunity
 
 
 [6]
 Judge Kiser's district court opinion in this case found that "anyone" was a term that included the states. Although Kiser did not undertake an abrogation analysis because he found that article I did not give Congress the power to abrogate, his implied waiver analysis concluded that the states were included in the class of defendants. Anderson, 633 F.Supp. at 1159
 
 
 [7]
 The legislative history of Sec. 110 does not define the term "government body." Nevertheless, it would be strange indeed if the meaning of the phrase varied from section to section within the Act
 
 
 [8]
 Anderson also offers the exemptions contained in Secs. 107, 108, and 601. I find Anderson's arguments based on these sections to be less compelling than those based on the aforementioned sections and therefore I will not prolong this dissent any more than is necessary. I do note that Secs. 107-108, applying to fair use, libraries and archives does offer minimal support for Anderson's argument because the coverage therein does cover state activities
 The provisions of Sec. 601, which expired on July 1, 1986, however, are not helpful to the exemption portion of Anderson's argument. Section 601 minimizes copyright protection for works not manufactured in the United States or Canada. Section 601(b)(3) grants the "Government of any State" an exemption from subsection (a) and, accordingly, the state as a plaintiff is entitled to full protection. Section 601, then, does not identify a state as an exempted defendant.
 
 
 [9]
 I note in passing that Congress is adept at recognizing state immunity under the eleventh amendment. Several environmental statutes provide for governmental instrumentality or agency liability "to the extent permitted by the eleventh amendment to the Constitution...." See, e.g., 33 U.S.C. Sec. 1365(a); 16 U.S.C. Sec. 1540(g)(1)(A); 49 U.S.C. Sec. 1686(a); 42 U.S.C. Sec. 4911(a)(1)