CALEB PIERCE, INC. *vs.* COMMONWEALTH.

Barnstable.   February 7, 1968. — May 9, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& KIRK, JJ.

*Eminent Domain,* Validity of taking, Authority for taking, Purpose of
taking, Right to damages, Motive for taking.   *Evidence,* Of motive.
*Practice, Civil,* Requests, rulings and instructions.   *Error,* Whether
error harmful.

St. 1957, c. 419, authorizing the Commissioner of Public Safety, on
behalf of the Commonwealth, to take by eminent domain described
premises adjacent to a State police substation, "to make such im-
provements on said land as he deems desirable," and to "expend
such sums as may be appropriated therefor" was not void on its
face for failure to mention any public purpose or use for which the
land was taken [308–309]; the authorization to make improvements
was not too vague and indefinite or an illegal delegation of legislative
power [310]; and the statute was not in conflict with the general
provision set forth in G. L. c. 147, § 2, authorizing the Commissioner
to purchase land [310].
An order of taking by eminent domain by the Commonwealth of land
adjacent to a State police substation stating that the taking was for
the purpose of "maintaining a State Police substation" was not void
on its face for failure to allege that the taking was for a public pur-
pose [309]; and testimony at the trial of a writ of entry that "as a
result of the taking the Police Substation was more visible and traffic
control was facilitated" warranted the judge's conclusion that the
taking was for a public purpose [309–310].
Contentions that a taking by eminent domain by the Commonwealth
as authorized by St. 1957, c. 419, of certain land was invalid because
the order of taking provided for only nominal damages, because no
compensation was paid to the owner prior to the taking, and because
an appropriate remedy was not "provided . . . upon an adequate
fund," were without merit. [310]
At the trial of a writ of entry to recover possession of certain land in a
town taken by the Commonwealth by eminent domain as authorized
by St. 1957, c. 419, there was no error in the exclusion of evidence
that the statute was sponsored and promoted solely to thwart con-
struction on the land by the demandant and was designed for the
apparent benefit of the town. [310–311]
At the trial of a writ of entry in which the judge by his extensive findings
separated law and fact and made it clear that his findings were in-

tended to stand as such even if his rulings of law were erroneous, any inconsistency in his action on the tenant's requests for rulings did no harm to the demandant. [311–312]

WRIT OF ENTRY in the Land Court on December 7, 1964. The case was heard by *McPartlin*, J.

*James C. Gahan, Jr.* (*Paul A. Kelley* with him) for the demandant.

*James P. Cassidy, Jr.*, Legal Assistant to the Attorney General (*Harold Putnam*, Assistant Attorney General, with him), for the Commonwealth.

SPALDING, J. This writ of entry is brought against the Commonwealth to recover possession of a parcel of land (locus) in the town of Yarmouth. The tenant pleaded nul disseisen. The judge rendered a decision in which he ordered judgment for the tenant. The case comes here on the demandant's exceptions to the judge's decision, to certain rulings on evidence, and to various rulings on requests.

The facts are not in dispute. In December, 1954, the demandant became the owner of the locus which was adjacent to a State police substation. The demandant intended to develop it for commercial purposes including the construction of a motel. To this end it had a subdivision plan prepared and consulted with various town officials. Chapter 419 of St. 1957 authorized the Commissioner of Public Safety (Commissioner) to take the locus by eminent domain under G. L. c. 79 or to acquire it by purchase. The act does not specify any purpose for the taking; nor does it prescribe any use to which the locus must be put. It authorized the Commissioner "to make such improvements on said land as he deems desirable" and to "expend such sums as may be appropriated therefor." An appropriation of $15,000 was made under c. 743 of St. 1957 for the acquisition of the locus, including costs of improvements, but, save for $607 expended for appraisal and legal fees, the funds subsequently reverted and thereafter no money for purposes of the taking has been available.

The decision of the judge included the following: Acting under c. 419 and c. 79, the Commissioner on behalf of the

Commonwealth took the locus in fee "for the purpose of maintaining a State Police substation." The order of taking was dated October 2, 1958, and was duly recorded together with a plan in the appropriate registry on October 7, 1958.[1] Sometime between 1955 and October 2, 1958, the date of the order, a sketch was made by the deputy commissioner showing what was to be done with the locus in conjunction with the police substation.[2] There were no other written memoranda, documents, records or plans in the files of the Department of Public Safety concerning the use to be made of the locus. The underbrush and some trees have been removed, and some fill has been placed on the locus by department employees. No specific expenditures have been made for this work. The clearing of the brush and removal of trees gave a better view of the station to drivers of vehicles on the highway, and it aided persons using the driveway on the station grounds to enter and leave. The station is set back about 100 feet from the highway.

The judge concluded that a taking of the locus authorized by the Legislature was made and was for the purpose of maintaining a State police substation in the town of Yarmouth, a public use; that the locus is being used for that purpose; and that "the taking was legal and valid and made in good faith and founded on a public necessity."

1. The demandant urges that St. 1957, c. 419, and the order of taking are invalid and, consequently, the taking itself is of no effect.[3] Chapter 419, it is argued, is invalid because it does not mention any public purpose or use for which the land is to be taken; it merely authorized the Commissioner "to make such improvements on said land as he deems desirable." This argument is premised upon the assumption that the public purpose must be set forth in the enabling act. We disagree. The Legislature clearly in-

---

[1] A petition for damages is now pending in the Superior Court. See *Moore* v. *Sanford*, 151 Mass. 285, 287.

[2] The sketch was not introduced and there is nothing in the record to show what it contained.

[3] This point is raised by exceptions to the denial of the demandant's fourth and fifth requests.

tended to authorize the taking of the locus. Chapter 419 describes the locus in some detail. The act is entitled to the benefit of a presumption that the taking was for a public purpose and was necessary. Accordingly, it is not void on its face. Nor is the order of taking invalid for failure to allege a public purpose. The order states that the land was taken for the purpose of "maintaining a State Police substation." This is sufficient to withstand the demandant's challenge that the order is void on its face.

In *Boston* v. *Talbot*, 206 Mass. 82, 89–90, it was said, "The question whether the use for which land is taken under the right of eminent domain is a public use is a judicial question, and the determination of the Legislature upon it may be revised by the court. . . . But if the use for which the taking is made is public, the question whether the taking of a particular piece of real estate is necessary or expedient is a legislative question, upon which the decision of the Legislature, as a tribunal of fact, is conclusive." See *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388, 390–392.

The demandant's ninth request, which was denied, asked the judge to rule that the taking was not for a public purpose. It is contended that "[a]t no time has there ever existed any intention . . . to improve, build upon or make any use of this land. The sole purpose for the taking was to let the land lie open." In support of this contention the demandant directs our attention to the hypothetical illustration in *Despatchers' Cafe Inc.* v. *Somerville Housing Authy.* 332 Mass. 259, 263, where it was said, "It is perhaps possible to imagine a case where the authorities ostensibly taking land for a schoolhouse have no intention of building any schoolhouse at all but are really taking the land to let it lie open for the benefit of adjoining land owned by themselves or for some other irrelevant purpose. See *Sellors* v. *Concord*, 329 Mass. 259, 262. It will be time enough to deal with such a case when it arises."

The order of taking recited the purpose of "maintaining a State Police substation." The Deputy Commissioner of Public Safety testified that "as a result of the taking the

Police Substation was more visible and traffic control was facilitated." The judge could have concluded that the taking was for a public purpose.

2. The demandant's eleventh request asked the judge to rule that the authorization given to the Commissioner in c. 419 "to make such improvements . . . as he deems desirable" was too vague and indefinite and was an illegal delegation of the legislative power of eminent domain. The judge denied the request. The Commissioner stood in virtually the same position as the Legislature with respect to the exercise of the power. It was not necessary that the details of the development be set forth in the enabling act. See Nichols, Eminent Domain (Rev. 3d ed.), § 3.21 [3].

3. Contrary to the demandant's contention, there is no conflict between G. L. c. 147, § 2, and c. 419. The former provides in part, that the "commissioner, with the approval of the governor and council, may expend such sums as may be appropriated for the *purchase* of land for housing units of the state police" (emphasis supplied). The existence of this general provision did not preclude the Legislature from authorizing takings in particular instances. There is nothing to the contrary in *Paddock* v. *Brookline*, 347 Mass. 230, cited by the demandant.

4. The demandant argues that the order of taking was invalid (1) because it provided for only nominal damages, (2) because no compensation was paid to it prior to the taking, and (3) because an appropriate remedy was not "provided . . . upon an adequate fund." (Requests numbered 5, 7, 8 and 10.) These contentions lack merit. The demandant has a constitutional right to just compensation. That right is not limited by the award of nominal damages. Although the practice of awarding nominal damages has been disapproved by this court, the making of such an award does not invalidate the taking. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 190–191, fn. 2, and cases cited.

5. The demandant excepted to the exclusion of certain evidence which was offered to show that the legislation from

which c. 419 originated was sponsored and promoted solely to thwart construction by the demandant and was designed for the apparent benefit of the town.[4] The judge did not err in excluding this evidence.   As was said in *Despatchers' Cafe Inc.* v. *Somerville Housing Authy.* 332 Mass. 259, 263–264, "Apparently the plaintiffs expect to show by oral evidence that the authority's motives are not what they purport to be.   Presumably they intend to put the members of the authority on the stand and to cross-examine them as to their motives.   If the plaintiffs can do that in this case, any person whose land is about to be taken for a public purpose can do the same. . . . To permit this would be seriously to hamper public officers in the performance of duties necessary to the public welfare. . . . In our opinion such a bill as this, attacking merely the impelling motives of officers authorized to exercise the power of eminent domain and actually exercising that power for authorized purposes, cannot be maintained. . . ."   See *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 563.

6. Finally the demandant contends that there was an inconsistency in the judge's action on the tenant's requests. The tenant requested rulings (request no. 1) that a finding for the demandant was not warranted, and (request no. 2) that a finding for the tenant was required.   Both were denied.   However, he allowed the tenant's thirteenth request to the effect that "as a matter of law" the taking was for a public purpose.[5]   The inconsistency, if one there was, did

---

[4] The evidence excluded consisted of correspondence between members of the board of selectmen and the senator representing the district to the effect that the construction of a store or dwelling on the locus would spoil the appearance of the area which was composed principally of public buildings and that, if the land were purchased or taken by eminent domain, this could be avoided.

[5] This request reads, "The order of taking dated October 2nd, 1958, and recorded in Barnstable Registry of Deeds, Book 1018, Page 450, by the Commissioner of Public Safety acting in behalf of the Commonwealth of Massachusetts under authority of Chapter 419 of the Acts of 1957 which recites that a taking is made for the 'purpose of maintaining a police substation'; which land when taken in fact adjoined an existing State Police substation, which land has been solely and persistently held under the jurisdiction of the State Police within the Department of Public Safety, is as a matter of law a taking for a public purpose."

no harm. The purpose of requests in cases tried without a jury is to secure a separation of law and fact. *Hogan* v. *Coleman*, 326 Mass. 770, 772–773, and cases cited. Here the judge by his extensive findings had separated law and fact (see *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 167) and made it clear that his findings were intended to stand as such even if his rulings of law were erroneous. See *Brodeur* v. *Seymour*, 315 Mass. 527, 530. Thus there was no danger that his findings were tainted by erroneous views of the law.

*Exceptions overruled.*