**Joan F. LANE, d/b/a Lane & Co., Plaintiff, Appellant,**

v.

**The FIRST NATIONAL BANK OF BOSTON, et al., Defendants, Appellees.**

No. 88–1815.

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1989.

Decided March 22, 1989.

William F. Spallina, Watertown, Mass., for appellant.

Steven B. Rosenfeld with whom Peter L. Felcher, Jon D. Kaplon, Paul, Weiss, Rifkind, Wharton & Garrison, Bernard Korman, I. Fred Koenigsberg, Edward W. Chapin, Alan L. Shulman, Silverman & Shulman, P.C., Howard L. Wattenberg, Marshall, Morris, Glinert, Powell, Wattenberg & Perlstein, Alvin Deutsch and Linden & Deutsch, New York City, were on brief, for Nat. Music Publishers' Ass'n, Inc., American Soc. of Composers, Authors and Publishers, Broadcast Music, Inc., Music Publishers' Ass'n of the U.S. and The Songwriters Guild of America, amici curiae.

Lisa A. Levy, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief for appellees the

Com. of Massachusetts Dept. of Revenue, Harvey J. Beth, Edward J. Collins, Jr., and Roberta Heinzmann.

Before BOWNES and SELYA, Circuit Judges, and PETTINE,* Senior District Judge.

SELYA, Circuit Judge.

This appeal presents, face up and squarely, the vexing question of whether the Eleventh Amendment provides shelter to States in actions brought pursuant to the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101–810 (1982). For the reasons set forth herein, we conclude that it does.

## I

Plaintiff-appellant Joan F. Lane brought suit in the federal district court against the Commonwealth of Massachusetts and divers others,[1] charging copyright infringement. The Commonwealth, she said, had infringed on her copyrights in certain compilations of financial data. Plaintiff sought variegated relief, money damages included. After some backing and filling, the district court ruled that the Eleventh Amendment barred Lane's damage action against the Commonwealth. *Lane v. First Nat'l Bank of Boston,* 687 F.Supp. 11, 14–15, 17–18 (D.Mass.1988).

Plaintiff then asked that 28 U.S.C. § 1292(b) be invoked and the district judge signed the requested certificate.[2] Lane posed the question which she believed deserving of interlocutory review as follows:

... [D]id the district court err by dismissing a copyright claim against a state and its agencies on the basis of 11th Amendment immunity even though the U.S. Supreme Court in *Atascadero State Hospital v. Scanlon,* held that 11th Amendment immunity is not available if a reading of the statute conferring jurisdiction upon the federal court shows "by such overwhelming implication from the text as will leave no room for any other reasonable construction" that Congress has abrogated such immunity and the result of the application of 11th Amendment Immunity ... is that a copyright infringement action cannot be maintained against a state anywhere, leaving states free to infringe on copyrights?

Appellant's Petition for § 1292(b) Consideration (June 30, 1988) at 2–3 (citations omitted). Because we agreed that the issue was "sufficiently novel and important," *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1010 n. 1 (1st Cir.1988), we allowed the intermediate appeal to proceed.

## II

■ The Eleventh Amendment provides: The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Notwithstanding the seeming purport of the language, the

---

* Of the District of Rhode Island, sitting by designation.

1. The defendants included the Commonwealth, its Revenue Department, and its Bureau of Accounts. For ease in reference, we will treat the Commonwealth as if it were the only affected appellee, but our reasoning extends to the state agencies as well. Insofar as individual state workers have been sued in their official capacities, they come under the same umbrella. *See, e.g., Northeast Federal Credit Union v. Neves,* 837 F.2d 531, 533 (1st Cir.1988) (claim against government official in representative capacity "must be regarded as [suit] against the sovereign"). The liability of state officials sued personally is unaffected by our holding.

2. The statute permitting interlocutory certification provides in pertinent part:
   When a district judge, in making in a civil action an order not otherwise appealable ... shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken....
   28 U.S.C. § 1292(b). "Only rare cases will qualify for the statutory anodyne." *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1010 n. 1 (1st Cir.1988). This, we think, is such a case.

Supreme Court has regularly held that the Amendment applies to suits by a citizen against her own State. *See, e.g., Welch v. State Dept. of Highways*, 483 U.S. 468, 97 L.Ed.2d 389 107 S.Ct. 2941, 2945, 2952–53 (1987); *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890). Despite its sweep, the jurisdictional bar which the Eleventh Amendment erects is not absolute; it can be lifted by Congress or it can be waived. The focus in this case is on what Congress purposed: did it mean to abrogate State immunity to damage actions for infringement of the Copyright Act?

The precincts patrolled by abrogation are not commodious. Within their cramped confines, congressional intent is never lightly to be inferred. The jurisdictional bar endures unless and until Congress enacts a law which "express[es] its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985). Lane attempts to negotiate this narrow corridor, asserting that Congress removed the States' Eleventh Amendment immunity by passage of the Copyright Act. There are, however, several obstacles blocking her path.

It is an open question whether Congress possesses the power to blunt the prophylaxis of the Eleventh Amendment when acting pursuant to the Copyright and Patent Clause, U.S. Const. art. I, § 8, cl. 8. Admittedly, Congress can defeat the States' immunity to suit in federal court when enforcing the substantive provisions of the Fourteenth Amendment. *See Welch*, 107 S.Ct. at 2946; *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). But it is less settled whether Congress has the power, when legislating under article I, to abolish Eleventh Amendment immunity. The Court has recently granted certiorari and heard oral argument on much of the same question, but has yet to resolve it. *See United States v. Union Gas Co.*, 832 F.2d

1343 (3d Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988) (Commerce Clause).

Intriguing though the tangram may be, we need not strain to solve it today. The case at hand is so postured that we can emulate the Court and "assume, without deciding or intimating a view of the question, that the authority of Congress to subject unconsenting States to suit in federal court is not confined to § 5 of the Fourteenth Amendment." *Welch*, 107 S.Ct. at 2946; *see also County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 252, 105 S.Ct. 1245, 1261, 84 L.Ed.2d 169 (1985) (similar). In so doing, we adhere to well-considered precedents in this, and other, circuits, deferring decision of the question in cases susceptible to resolution on independently sufficient grounds. *See, e.g., BV Engineering v. UCLA*, 858 F.2d 1394, 1397 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 859 (1989); *Richard Anderson Photography v. Brown*, 852 F.2d 114, 117 (4th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1988); *WJM, Inc. v. Mass. Dep't of Public Welfare*, 840 F.2d 996, 1001–02 (1st Cir.1988).

### III

■ Having sidestepped the first hurdle, we find the second to be insurmountable. Appellant's core contention is that the Copyright Act was meant to strip the States of their Eleventh Amendment immunity from suit in a federal venue. Leaping to such a conclusion, we think, illustrates the sanguine elevation of hope over reason.

In recent years, the Court has crafted an increasingly stringent test to determine whether Congress intended to dismantle the shelter of the Eleventh Amendment in any given instance. The touchstone, of course, is *Atascadero*. There, the Court remarked the critical importance of sovereign immunity[3] in our system of federal-

---

**3.** On occasion, some courts and commentators have attempted to redefine Eleventh Amendment immunity, at least in part, as a sort of structural sovereign immunity. We have said

before that "we see nothing as turning on these characterizations.... [and] thus use the terms sovereign immunity and Eleventh Amendment

ism, 473 U.S. at 242, 105 S.Ct. at 3147, and cautioned that "it is incumbent upon the federal courts to be *certain* of Congress' intent" in this regard. *Id.* at 243, 105 S.Ct. at 3148 (emphasis supplied). To achieve such a high degree of assurance, it is essential that Congress "unequivocally express th[e] intention [to vitiate Eleventh Amendment immunity] in the statutory language" itself. *Id.* Because the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1982), "f[e]ll far short of expressing an unequivocal congressional intent to abrogate the States' Eleventh Amendment immunity," it failed this rigorous test. *Id.* at 247, 105 S.Ct. at 3150.

In *Welch*, the drumbeat grew louder. The Court reiterated the stringencies of *Atascadero* in considering the Jones Act, 46 U.S.C.App. § 688 (1982), sustaining an Eleventh Amendment defense because "Congress has not expressed in unmistakable statutory language its intention to allow States to be sued in federal court under the Jones Act." 107 S.Ct. at 2947. The *Welch* Court made clear that, to the extent earlier precedent may have suggested a more flexible approach, that precedent should be disregarded. *See id.* at 2948 (previous methodology, involving "discussion of congressional intent to negate Eleventh Amendment immunity ... [,] no longer good law"). *See also* Brown, *State Sovereignty under the Burger Court—How the Eleventh Amendment Survived the Death of the Tenth*, 74 Geo.L.J. 363, 383 (1985) ("it is clear that *Atascadero* changed the rules for abrogation"). Against this backdrop, the height of the bar which appellant must vault becomes readily apparent.

Let us turn next to the precedent which purports to chart the junction where the Copyright Act and the Eleventh Amendment intersect. While the Supreme Court has never decided whether the Act was meant to abrogate Eleventh Amendment immunity, the straws in the wind are rather distinctive. The two circuits to address this precise issue since 1985 have concluded that the language of the Copyright Act

does not measure up to the uncompromising *Welch/Atascadero* benchmark. *See BV Engineering*, 858 F.2d at 1399 (overruling *Mills Music, Inc. v. State of Arizona*, 591 F.2d 1278 (9th Cir.1979)); *Richard Anderson Photography*, 852 F.2d at 117. Although some courts had earlier concluded that Congress, by passing the Copyright Act, intended to remove the States' immunity, *see, e.g., Mills Music*, 591 F.2d at 1284–86; *Johnson v. University of Virginia*, 606 F.Supp. 321, 324 (W.D.Va. 1985), the slate seems to have been wiped clean; in the post-*Atascadero* era, no court to our knowledge has held that the Copyright Act passes the reformulated test for abrogation of Eleventh Amendment protection. In addition to the Fourth and Ninth Circuits, every district court—including those which initially considered the *BV Engineering* and *Richard Anderson Photography* cases—has come out the other way. *See, e.g., Cardinal Industries, Inc. v. Anderson Parrish Assoc.*, No. 83–1038–CIV–T–13 (M.D.Fla. Sept. 6, 1985), *aff'd mem.*, 811 F.2d 609 (11th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 88, 98 L.Ed. 2d 50 (1987); *Woelffer v. Happy States of America, Inc.*, 626 F.Supp. 499, 504 (N.D. Ill.1985).

### IV

We give credit where credit is due. Lane and the amici—the latter, in particular—mount a powerful, carefully-fashioned offensive calculated to convince us that these judges are wrong; that the Court's doctrine is not as inelastic as appears at first blush; that howsoever the standard may be articulated, the Copyright Act passes *Welch/Atascadero* muster; and that, failing all else, the unique circumstances of this case—especially the exclusivity of the federal courts' jurisdiction in copyright matters, *see* 28 U.S.C. § 1338(a)—require relaxation of the ground rules. We remain unpersuaded.

### A

The first three of these arguments telescope into a unitary theme, hawking the

immunity interchangeably." *WJM, Inc.*, 840     F.2d at 1001 n. 5.

notion that the Copyright Act itself evinces an indisputably clear intent to override the States' Eleventh Amendment immunity. In the main, Lane relies upon the following statutory references to prove her point: 17 U.S.C. § 501 ("Anyone who violates any of the exclusive rights of the copyright owner ... is an infringer...."); 17 U.S.C. § 602 (importation of copyrighted material without copyright owner's permission not infringing if done "under the authority or for the use of ... any State"); and a medley of exceptions built into the Act referable to "governmental bodies," *e.g.*, 17 U.S.C. §§ 110(6), 110(8), 111(a), 112(b), 118(d)(3). We have set out the text of these statutory provisions in the Appendix. Taken individually or in the ensemble, we do not believe them to be adequate to abrogate the States' immunity.

1. *Section 501.* In 1976, Congress made broadscale amendments to the Copyright Act. These included elimination of the term "any person" (used in § 101 of the Copyright Act of 1909) in the course of rewriting the statutory description of potential infringers, replacing that term with the word "anyone." Lane and the amici, as did the *Anderson* dissent, 852 F.2d at 126 (Boyle, J., dissenting), see this modification as supremely important. Although we agree that "anyone" has a slightly more encompassing embrace than "any person," we do not believe that the switch can carry the heavy cargo which appellant assigns to it. Demonstrating that the Act was made more inclusive is a far cry from showing that it was extended to reach States.

In recent times, the Supreme Court has twice rejected pleas that equally broad statutory language evinced a categorical intent to abolish Eleventh Amendment immunity. *See Welch*, 107 S.Ct. at 2947 (phraseology "any seaman" not the kind of "unmistakable language" sufficient to demonstrate requisite congressional intent); *Atascadero*, 473 U.S. at 245–46, 105 S.Ct. at 3149 (phraseology "any recipient" not manifestative of congressional desire to expose States to suit in federal court). We agree with the Ninth Circuit that a change in statutory language is insufficient to overcome the *Welch/Atascadero* hurdle unless

the new wording is "unequivocal" in its purport. *BV Engineering*, 858 F.2d at 1398. Whatever message hopeful litigants may read into the modest change in section 501, the revision, on its face, is much too cryptic to bottom resolution of the Eleventh Amendment inquiry.

2. *Section 602.* This is the only section of the Copyright Act which refers explicitly to State authority. The burden of section 602 is that, generally, importation of copyrighted material without permission of the copyright owner will be actionable as infringement; but there is an exception for importations "under the authority or for the use of ... any State." 17 U.S.C. § 602(a)(1). Lane urges that this subsection would be rendered superfluous if States already enjoyed Eleventh Amendment protection in copyright cases, and points to familiar law counseling that courts should prefer constructions which give effect to each word and phrase employed by the draftsmen.

We do not deny that there is some logic to this discourse, but the *Welch/Atascadero* strictures constrain us from choosing among reasonable interpretations of a statute and divining from such a choice an implicit congressional recognition that the States' immunity should yield. Where, as here, a statutory provision is "susceptible to more than one reasonable interpretation," *BV Engineering*, 858 F.2d at 1399, it cannot suffice to penetrate the dense shielding of the Eleventh Amendment. Moreover, the ultimate dilemma is not now upon us; plaintiff's construction of section 602 is not an especially compelling one.

The exemptive phrase "under the authority or for the use of ... any State" does not necessarily imply preexisting State liability. The exception may well have been designed not to protect the States themselves, but to safeguard, say, State employees acting in their individual capacities, *cf., e.g., Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 517–18 (1st Cir.1987) (sovereign immunity, where applicable, does not bar damage claims against officials personally), or State contractors, *cf.,*

e.g., *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486 (1st Cir.1989) (construing 28 U.S.C. § 1442(a)(1) to benefit "private persons ... who act under the direction of federal officers"), or the like. Because the provision is not inconsistent with States' immunity from suit under the Copyright Act,[4] reading into it the unequivocal statement of congressional purpose required by the *Welch/Atascadero* rule would be well beyond our proper province.

3. *The Act As A Whole.* Notwithstanding our conclusion that neither the shift in the linguistic gears of section 501 nor the enactment of the "authority ... or ... use" exception, 17 U.S.C. § 602(a)(1), prove congressional intent to abrogate the Commonwealth's immunity, our task is unfinished. There is nothing so singular about an Eleventh Amendment examination that impels us to view each piece of a statute in artificial isolation. Whatever change in approach has been wrought by the *Welch/Atascadero* duarchy, *see supra* note 4, "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law...." *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (citations omitted). What is different about Eleventh Amendment perscrutation is not the focus of the look—in determining whether Congress intended to abrogate immunity, we must continue to "focus on the language of the statute as a whole," *Richard Anderson Photography*, 852 F.2d at 118 & n. 3; *see also BV Engineering*, 858 F.2d at 1398—but the point at which the examination bears fruit. The requirement that Congress "unequivocally express th[e] intention [to vitiate immunity] in the statutory language" itself, *Atascadero*, 473 U.S.

at 243, 105 S.Ct. at 3148, must still be fulfilled. Accordingly, we turn our attention to whether the Copyright Act as a whole demonstrates Congress' intent to subject unconsenting States to suit in federal court with the necessary degree of clarity and certitude.

In this respect, appellant's thesis builds in four stages: (1) States are "governmental bodies"; (2) Congress would not have written exemptions for States unless it thought that, without such exemptions, States would be liable under the Copyright Act; (3) Congress, therefore, necessarily expressed its intent to remove Eleventh Amendment immunity in fashioning the "governmental bodies" exemptions; and (4) any lingering doubt is resolved by the remaining provisions of the statute, especially sections 501 and 602. We find the words easy on the ear, but the music to which they are set is discordant. The rigors of the *Welch/Atascadero* score demand a different tune.

The phrase "governmental bodies" is as broad as it is deep. Surely, the term may include States, but it does not inevitably do so, at least in the copyright context. We concur with the Fourth Circuit that the words can sensibly "be read as applicable only to local governments or to actions by government officials so that the states' continued immunity would not render [these exemptions] superfluous." *Richard Anderson Photography*, 852 F.2d at 119. Although Congress may have left room for doubt through the phrasing of these exemptions, doubt is not appellant's ally in her current quest.

Lane tells us that *In re McVey Trucking, Inc.*, 812 F.2d 311 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987), compels—or at least suggests—a conclusion that "governmental

---

4. Amici insist that because a definitive interpretation of § 602(a)(1) cannot be confirmed in the legislative history, the statute's "plain" meaning —as a vehicle for exempting the States from importation suits—should prevail. This suggestion, however, puts the shoe on the wrong foot. So long as more than one plausible interpretation can be rendered, neither meaning, without more, can survive *Welch/Atascadero* scrutiny. Put another way, ordinary principles of statu-

tory construction, which may in other contexts point to a preferred interpretation, do not suffice, in and of themselves, to unlatch the Eleventh Amendment gate. The Court, zealous in its role as the protector of the Eleventh Amendment and of the States' sovereignty, seems to be increasingly insistent upon "special rules of statutory drafting" in this context. *Atascadero*, 473 U.S. at 254, 105 S.Ct. at 3153 (Brennan, J., dissenting).

bodies" and "States" be read synonymously, and that nullification of the States' sovereign immunity be inferred from inclusion of the cited references. The reliance on *McVey* is mislaid. There, the Seventh Circuit determined that similar statutory language—"governmental units," as used in the Bankruptcy Code—fulfilled the requirement of *Atascadero* and authorized suit in federal court. *Id.* at 326. But the operative term was defined within the same statute, viz., § 101(21) of the Bankruptcy Code, to include States. *Id.; see also WJM, Inc.,* 840 F.2d at 1001 ("section 547(b) of the Bankruptcy Code ..., when read with two other Code sections [including § 101(21)] plainly sets forth a cause of action against a state"). Lane is riding a horse of quite a different color; the Copyright Act is silent as to the meaning of the term "governmental bodies," and the legislative history—for what it may be worth, *see infra*—is ambiguous at best. To employ our own limitary definition, as appellant beseeches, would be to stand the *Welch/Atascadero* doctrine on its head.[5]

Amici assert that any ambiguity in the scope of the term "governmental bodies" is resolved by the legislative history. The archival data, they contend, make clear that Congress meant the term to encompass States. There are twin difficulties with this proposition. First, we question whether, in light of *Welch* and *Atascadero*, resort can be made to legislative history in determining if Congress has removed Eleventh Amendment immunity. *Atascadero* requires that Congress "express its intention to abrogate the Eleventh Amendment in unmistakable language *in the statute itself.*" 473 U.S. at 243, 105 S.Ct. at 3148 (emphasis supplied). The *Atascadero* Court made no reference in its opinion to the legislative history of the Rehabilitation

Act, despite respondent's reliance thereon and the dissent's lengthy analysis thereof. *See id.* at 248–52, 105 S.Ct. at 3150–52 (Brennan, J., dissenting). Although the Seventh Circuit recently rejected the view that *Atascadero* precludes courts from seeking guidance in legislative history for Eleventh Amendment purposes, *McVey,* 812 F.2d at 324, the conclusion is less than self-evident. Be that as it may, we have the luxury of being able to reserve the point. In this case, even were we to interpret *Atascadero* as permitting reliance upon legislative history, the data are sufficiently indistinct that the outcome of our search for clear meaning would be unaffected. Contrary to the rodomontade of the amici, nothing of pivotal consequence can be discerned from the most meticulous inspection of the legislative record, fairly read.

We bring this portion of our analysis to a close. It would serve no useful purpose to plod further in this direction. To the extent that appellant and/or amici mention other statutory references, the citations are plainly ineffectual. As a matter of statutory interpretation, the effort to hold the Commonwealth responsible in money damages derives insufficient sustenance from either the language of the Copyright Act or from its legislative history. Whether taken section by section or in its entirety, the statute reveals that Congress at no time and in no satisfactory manner made unmistakably clear its explicit intent to abrogate Eleventh Amendment immunity. *Accord BV Engineering,* 858 F.2d at 1399; *Richard Anderson Photography,* 852 F.2d at 120.

### B

In urging that we find the States' sovereign immunity to have been erased, appel-

---

5. Even if, as appellant urges, we were to define the phrase "governmental bodies" to include States, the exemptions would not necessarily be consistent only with a correlative conclusion that Congress must have meant to abrogate States' immunity. After all, "[c]onsistent with the Eleventh Amendment ... federal courts may, notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, enjoin state officials to conform *future* conduct to the requirements of fed-

eral law." *Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694, 697 (1st Cir.1983) (emphasis supplied); *see also Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Ex Parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Accordingly, exemptions for "governmental bodies," including States, might reasonably be designed only to exempt States from injunctions or other non-monetary relief in respect to future conduct.

lant mounts yet a further exhortation—and one we do not lightly dismiss. The linchpin of this contention is the federal courts' original and exclusive jurisdiction in matters arising under the Copyright Act.[6] Given the embargo of copyright matters from state-court jurisdiction, if an infringing State cannot be made to respond in money damages in federal court, Lane theorizes that the offender cannot be sued for damages in any venue. We are told that the Court has never recognized the Eleventh Amendment as a bar to federal court jurisdiction when that jurisdiction is exclusive, and further, that Congress could not have meant to create rights under the Copyright Act without tendering any corresponding remedies. Notwithstanding their superficial appeal, these protestations do not carry the day.

The first point can be dispatched with relative ease. Admiralty libels *in rem* have long been within the exclusive jurisdiction of the federal courts. *See, e.g., Madruga v. Superior Court,* 346 U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290 (1954); *see also* 28 U.S.C. § 1333. That circumstance, however, has not deflected the courts—including both the Supreme Court and this court—from holding, consistently to our knowledge, that *in rem* admiralty actions against unconsenting States are barred by the Eleventh Amendment. *See Ex Parte New York No. 2,* 256 U.S. 503, 510–11, 41 S.Ct. 592, 593, 65 L.Ed. 1063 (1921); *Fitzgerald v. Unidentified, Wrecked and Abandoned Vessel,* 866 F.2d 16, 17–18 (1st Cir.1989); *Maritime Underwater Surveys, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel,* 717 F.2d 6, 7 (1st Cir.1983).

The plaintiff's second point is more troubling. If the Eleventh Amendment holds sway, suit cannot be brought in federal court against an infringing State, which means that no damage action *under the Copyright Act* can be brought at all. *See* 28 U.S.C. § 1338(a). In that important sense, Congress will have crafted a right for which it ceded no corresponding remedy against certain infringers. We are not unmindful of the seeming inequities of this result, nor of its apparent inconsistency with the broad powers granted Congress under the Copyright and Patent Clause: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. By the same token, we see few countervailing policy considerations. The concerns which undergird the Eleventh Amendment—comity and solicitude for State interest, *e.g., Della Grotta v. State of Rhode Island,* 781 F.2d 343, 347 (1st Cir.1986); regard for undue fiscal impact upon State coffers, *e.g., Edelman v. Jordan,* 415 U.S. 651, 663–68, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974); containment of federal court jurisdiction, *e.g., Atascadero,* 473 U.S. at 242–43, 105 S.Ct. at 3147–48—seem little furthered by hewing strictly to the party line in the copyright context. *See BV Engineering,* 858 F.2d at 1399–1400; *see also* Note, *Congressional Abrogation of State Sovereign Immunity,* 86 Colum.L.Rev. 1436, 1450–51 (1986) (where, as in the case of the Copyright Act, a statute's impact on state sovereignty is less intrusive, the need for a specific showing of congressional intent should logically be diminished).

But these concerns, real though they may be, are more appropriate for congressional, rather than judicial, consideration. The Court has never indicated that there is a variable standard for ascertaining whether Congress meant to dissolve Eleventh Amendment immunity, and it is difficult to develop a plausible jurisprudential basis for one. Notwithstanding changes in context,

---

**6.** The jurisdictional statute provides:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

28 U.S.C. § 1338.

the "fundamental nature of the interests implicated by the Eleventh Amendment," *Atascadero*, 473 U.S. at 242, 105 S.Ct. at 3147, remains the same. To hold that the *Welch/Atascadero* criterion applies to certain congressional manifestations of nullificatory intent, but not to others, would make a chameleon of the Amendment, turning the question of a State's immunity into too much of a guessing game. The Eleventh Amendment is the Eleventh Amendment—or, as Gertrude Stein once wrote, "a rose is a rose is a rose," G. Stein, *Sacred Emily* (1913)—and the Amendment is a constant, not some strange, pleochroic phenomenon. Courts have no right to reshape its contours from case to case by rhetorical prestidigitation in order to meet the exigencies of each passing set of circumstances.

■ In short, we are constrained by the Court's directives, first in *Atascadero* and thereafter in *Welch*, to ignore the policy concerns evoked by exclusivity of jurisdiction, and to unlatch the gates only when "Congress [has] express[ed] its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Atascadero*, 473 U.S. at 243, 105 S.Ct. at 3148; *see also Welch*, 107 S.Ct. at 2946 (quoting *Atascadero*). Unless and until Congress amends the Copyright Act to remove the States' immunity, the Commonwealth cannot be sued for infringement damages in federal court—or anywhere, for that matter.

We hasten to add that this outcome is not as intolerably harsh as appellant would have us believe. Lane is not defenseless if the State infringes. She may—as she is doing in this action—sue the responsible officials in their individual capacities for money damages. She may—as she has done here—sue private parties for abetting the allegedly wrongful acts. She may also seek prospective injunctive relief against

the Commonwealth. *See, e.g., Ramirez,* 715 F.2d at 697.

Finally, notwithstanding her inability to mount an infringement suit *per se* against appellee, damages may nonetheless be available. Massachusetts has enacted a tort claims act, Mass.Gen.L. ch. 258, § 2 (1988), which is to be construed liberally to allow plaintiffs with valid causes of action to recover for governmental wrongdoing. *See Alpert v. Commonwealth,* 357 Mass. 306, 258 N.E.2d 755, 762 (1970). If Lane's version of the facts is genuine, she would likely be able to sue Massachusetts in a state court for, say, deceit, conversion, or unfair competition.[7] Then, too, Mass. Gen.L. ch. 79, § 10 (1969) provides that damages may be recovered from the State whenever private property is confiscated. The statutory scheme manifests a recognition that where private property is taken for public use, a constitutional right to just compensation attaches. *See Caleb Pierce, Inc. v. Commonwealth,* 354 Mass. 306, 237 N.E.2d 63, 66 (1968). Since a copyright is property, *Roth v. Pritikin,* 710 F.2d 934, 939 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983), Lane may very well be able to sue in state court on a state-law claim for essentially the harm that she contends the Commonwealth has perpetrated. And if she exhausts State remedies and establishes that the Massachusetts legal system affords her no just compensation for the wrongful confiscation of her property, the Takings Clause of the federal Constitution might at that point enable her to pursue a damage remedy in federal court. *See Williamson County Regional Planning Comm'n v. Hamilton Bank* 473 U.S. 172, 194, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985); *Ochoa Realty Corp. v. Faria,* 815 F.2d 812, 815–17 (1st Cir.1987).

## V

■ As a last resort, amici argue that, whether or not Congress abrogated the

---

7. Interestingly, plaintiff pled a cause of action against the Commonwealth for misappropriation of trade secrets in this very suit. Though that count is barred by the Eleventh Amendment—the state tort claims act waives the Commonwealth's immunity only with respect to suits in state court, a circumstance which "does

not necessarily imply waiver of its eleventh amendment immunity" to suit in federal court, *Della Grotta,* 781 F.2d at 346; *see also Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3147—there is no reason to believe that the claim, for what it might be worth, could not have been maintained in state court.

States' immunity when passing the Copyright Act, Massachusetts has waived constitutional protection and impliedly acquiesced in the maintenance of a federal suit. The leitmotif of this claim is that the Commonwealth doffed the cloak of immunity by "affirmatively entering the copyright sphere—both through its ownership of copyrights and its infringement of appellant's copyright. . . ." Amicus Brief at 24. We agree that a State may waive the benefits of the Eleventh Amendment and consent to be sued in federal court. *See Welch*, 107 S.Ct. at 2945; *WJM*, 840 F.2d at 1002; *Della Grotta*, 781 F.2d at 346. But beyond that, the matter need not be pursued. The waiver argument was not raised by Lane either before the district court or on appeal.

We ordinarily refuse to consider points on appeal which were not advanced below. *See Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (listing representative cases); *United States v. Argentine*, 814 F.2d 783, 791 (1st Cir.1987); *United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982); *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979). We see no grounds to retreat from the steadfast application of this praxis today. Certainly, the mere fact that the amici, like the cavalry riding belatedly to the rescue, briefed and argued their waiver theory before us does not change the case's fundamental posture. Amici are allowed to participate on appeal in order to assist the court in achieving a just resolution of issues raised by the parties. We know of no authority which allows an amicus to interject into a case issues which the litigants, whatever their reasons might be, have chosen to ignore. *Accord National Comm'n on Egg Nutrition v. FTC*, 570 F.2d 157, 160 n. 3 (7th Cir.1977) (argument not made before agency, or by petitioners on appeal, cannot be asserted by amicus), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 113 (1978).

Furthermore, there is another good reason why, on this occasion, we should hold fast. Interlocutory appeals under 28 U.S.C. § 1292(b) are disfavored; they are wholly discretionary, and should be entertained but sparingly. *See Dupont Plaza*, 859 F.2d at 1010 n. 1; *McGillicuddy v. Clements*, 746 F.2d 76, 76 n. 1 (1st Cir.1984). Accordingly, such appeals should be strictly confined to the scope of the permission granted. In this instance, plaintiff neither requested nor received approval from the district court or from us to bring up the matter of waiver. To the exact contrary, Lane's petition for leave to appeal to this court limned the proposed question exclusively in terms of abrogation. *See supra* at 3. Respect for orderly procedure demands that we decline the amici's unsolicited invitation to expand the scope of review under section 1292(b) beyond the borders of the question which we originally certified.

## VI

We are not without sympathy for appellant's plight. It can persuasively be argued that our holding today, rather than furthering Congress' encouragement of creative endeavor, undermines it—and does so without a correspondingly beneficial tradeoff. If the objectives of the Copyright Act and the purposes of the Eleventh Amendment are weighed with no thumb on the scale, the societal balance likely tips in favor of abrogation. Yet courts are not free in instances like this to impose their value judgments on the community; policy choices of this kind are for the legislative, not the judicial, branch.

We are mindful, too, that senators and representatives are not omniscient. When the last broadscale revision of the federal copyright law was undertaken in 1976, Congress did not have the benefit of the Court's pronouncements in *Welch* and *Atascadero*, and might well have thought that it succeeded in eliminating the States' immunity by logical implication. But speculation of this stripe seems far too problematic a basis upon which to ground a holding that Congress intended to—and did—effectuate removal of the Eleventh Amendment shield. Guesswork would be antithetic to the bedrock *Welch/Atascadero* principle, which directs us to leave the jurisdictional bar in place unless Congress has enacted a law which "express[es] its inten-

tion to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Atascadero,* 473 U.S. at 243, 105 S.Ct. at 3148.[8]

We need go no further. To endorse the position advanced by appellant and amici would compel us to create, at the crossroads where the Eleventh Amendment and the Copyright Act intersect, a jurisprudential Bermuda Triangle into which the Court's "unmistakable language" requirement would disappear without a trace. We have neither the authority nor the inclination to follow so daunting a course. For the reasons discussed herein, the States—pending some future action by the Congress—continue to enjoy sovereign immunity in regard to damage suits charging copyright infringement.

*Affirmed.*

### APPENDIX

#### 17 U.S.C. § 501

§ 501. Infringement of copyright

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118, or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of sections 205(d) and 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit

the intervention, of any person having or claiming an interest in the copyright.

(c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

(d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

#### 17 U.S.C. § 602

§ 602. Infringing importation of copies or phonorecords

(a) Importation into the United States, without the authority of the owner of of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies of phonorecords under section 106, actionable under section 501. This subsection does not apply to—

(1) importation of copies or phonorecords under the authority or for the use of the Government of the United States or of any State or political subdivision of a State, but not including copies or phonorecords for use in schools, or copies of any audiovisual work imported for purposes other than archival use:

(2) importation, for the private use of the importer and not for distribution, by any person with respect to no more than

---

**8.** It is, we think, not without significance that the statutes considered by the *Atascadero* Court (the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*) and by the *Welch* Court (the Jones Act, 46 U.S.C.App. § 688), respectively, antedated the Copyright Act of 1976. Nevertheless, no allowance was made for Congress' possible lack of understanding of what the Court would ultimately require in this wise.

one copy or phonorecord of any one work at any one time, or by any person arriving from outside the United States with respect to copies or phonorecords forming part of such person's personal baggage; or

(3) importation by or for an organization operated for scholarly, educational, or religious purposes and not for private gain, with respect to no more than one copy of an audiovisual work solely for its archival purposes, and no more than five copies or phonorecords of any other work for its library lending or archival purposes, unless the importation of such copies or phonorecords is part of an activity consisting of systematic reproduction or distribution, engaged in by such organization in violation of the provisions of section 108(g)(2).

(b) In a case where the making of the copies or phonorecords would have constituted an infringement of copyright if this title had been applicable, their importation is prohibited. In a case where the copies or phonorecords were lawfully made, the United States Customs Service has no authority to prevent their importation unless the provisions of section 601 are applicable. In either case, the Secretary of the Treasury is authorized to prescribe, by regulation, a procedure under which any person claiming an interest in the copyright in a particular work may, upon payment of a specified fee, be entitled to notification by the Customs Service of the importation of articles that appear to be copies or phonorecords of the work.

### 17 U.S.C. §§ 110(6), (8)

§ 110. Limitations on exclusive rights: Exemption of certain performances and displays

Notwithstanding the provisions of section 106, the following are not infringements of copyright:

.    .    .    .    .

(6) performance of a nondramatic musical work by a governmental body or a nonprofit agricultural or horticultural organization, in the course of an annual agricultural or horticultural fair or exhi-

bition conducted by such body or organization; the exemption provided by this clause shall extend to any liability for copyright infringement that would otherwise be imposed on such body or organization, under doctrines of vicarious liability or related infringement, for a performance by a concessionnaire, business establishment, or other person at such fair or exhibition, but shall not excuse any such person from liability for the performance;

.    .    .    .    .

(8) performance of a nondramatic literary work, by or in the course of a transmission specifically designed for and primarily directed to blind or other handicapped persons who are unable to read normal printed material as a result of their handicap, or deaf or other handicapped persons who are unable to hear the aural signals accompanying a transmission of visual signals, if the performance is made without any purpose of direct or indirect commercial advantage and its transmission is made through the facilities of: (i) a governmental body; or (ii) a noncommercial educational broadcast station (as defined in section 397 of title 47); or (iii) a radio subcarrier authorization (as defined in 47 CFR 73.293–73.-295 and 73.593–73.595); or (iv) a cable system (as defined in section 111(f)).

.    .    .    .    .

### 17 U.S.C. § 111(a)

§ 111. Limitations on exclusive rights: Secondary transmissions

(a) Certain Secondary Transmissions Exempted.—The secondary transmission of a primary transmission embodying a performance or display of a work is not an infringement of copyright if—

(1) the secondary transmission is not made by a cable system, and consists entirely of the relaying, by the management of a hotel, apartment house, or similar establishment, of signals transmitted by a broadcast station licensed by the Federal Communications Commission, within the local service area of such

station, to the private lodgings of guests or residents of such establishment, and no direct charge is made to see or hear the secondary transmission; or

(2) The secondary transmission is made solely for the purpose and under the conditions specified by clause (2) of section 110; or

(3) The secondary transmission is made by any carrier who has no direct or indirect control over the content or selection of the primary transmission or over the particular recipients of the secondary transmission, and whose activities with respect to the secondary transmission consist solely of providing wires, cables, or other communications channels for the use of others: *Provided,* That the provisions of this clause extend only to the activities of said carrier with respect to secondary transmissions and do not exempt from liability the activities of others with respect to their own primary or secondary transmissions; or

(4) the secondary transmission is not made by a cable system but is made by a governmental body, or other nonprofit organization, without any purpose of direct or indirect commercial advantage, and without charge to the recipients of the secondary transmission other than assessments necessary to defray the actual and reasonable costs of maintaining and operating the secondary transmission service.

## 17 U.S.C. § 112(b)

§ 112. Limitations on exclusive rights: Ephemeral recordings

.    .    .    .    .

(b) Notwithstanding the provisions of section 106, it is not an infringement of copyright for a governmental body or other nonprofit organization entitled to transmit a performance or display of a work, under section 110(2) or under the limitations on exclusive rights in sound recordings specified by section 114(a), to make no more than thirty copies or phonorecords of a particular transmission program embodying the performance or display, if—

(1) no further copies or phonorecords are reproduced from the copies or phonorecords made under this clause; and

(2) except for one copy or phonorecord that may be preserved exclusively for archival purposes, the copies or phonorecords are destroyed within seven years from the date the transmission program was first transmitted to the public.

## 17 U.S.C. § 118(d)(3)

§ 118. Scope of exclusive rights: Use of certain works in connection with noncommercial broadcasting

(a) The exclusive rights provided by section 106 shall, with respect to the works specified by subsection (b) and the activities specified by subsection (d), be subject to the conditions and limitations prescribed by this section.

.    .    .    .    .

(d) Subject to the transitional provisions of subsection (b)(4), and to the terms of any voluntary license agreements that have been negotiated as provided by subsection (b)(2), a public broadcasting entity may, upon compliance with the provisions of this section, including the rates and terms established by the Copyright Royalty Tribunal under subsection (b)(3), engage in the following activities with respect to published nondramatic musical works and published pictorial, graphic, and sculptural works:

.    .    .    .    .

(3) the making of reproductions by a governmental body or a nonprofit institution of a transmission program simultaneously with its transmission as specified in clause (1), and the performance or display of the contents of such program under the conditions specified by clause (1) of section 110, but only if the reproductions are used for performances or displays for a period of no more than seven days from the date of the transmission specified in clause (1), and are destroyed before or at the end of such period. No person supplying, in accordance with clause (2), a reproduction of a transmission program to governmental bodies or nonprofit institutions under

this clause shall have any liability as a result of failure of such body or institution to destroy such reproduction: *Provided,* That it shall have notified such body or institution of the requirement for such destruction pursuant to this clause: *And provided further,* That if such body or institution itself fails to destroy such reproduction it shall be deemed to have infringed.